[Cite as *State v. Spiess*, 2020-Ohio-4376.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 19-CA-106 |
| | : | |
| JOSHUA SPIESS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County
Municipal Court, Case No. 19CRB00912

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      September 9, 2020

APPEARANCES:

For Plaintiff-Appellee:

TRICIA MOORE
40 West Main St., 4th Floor
Newark, OH 43055

For Defendant-Appellant:

KORT GATTERDAM
ERIK P. HENRY
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High St.
Columbus, OH 43215

*Delaney, J.*

{¶1} Appellant Joshua Spiess appeals from the Judgment of Conviction of the Licking County Municipal Court dated September 26, 2019. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following facts are adduced from the record of appellant's jury trial.

{¶3} This case arose on May 20, 2019, around 10:28 a.m., when Deputy Holmes of the Licking County Sheriff's Office was working routine commercial vehicle enforcement in Union Township. Holmes is the LCSO commercial motor vehicle enforcement officer. Holmes was parked in the parking lot of a former Valero gas station watching commercial vehicle traffic at a truck stop across the street.

{¶4} Holmes observed a car pull into the Valero lot at a high rate of speed, lock up its brakes, and come to a complete stop. A woman (Jane Doe) exited the driver's side of the car and walked around to the passenger side. A man later identified as appellant got out of the passenger side and yelled at Jane Doe. Appellant grabbed Doe by the shoulders, picked her up off the ground, and slammed her into the side of the car while yelling at her. Appellant then dropped Jane Doe to the ground and placed his arm around her neck in a choke hold.

{¶5} Holmes flipped his lights on and contacted dispatch to advise he was investigating a domestic violence incident in progress; he requested backup. Holmes pulled his police car up to Doe's car with lights on as appellant "nudged" Doe into the front passenger seat of the vehicle. Holmes described appellant as highly agitated and screaming at Doe.

{¶6} Holmes cuffed and detained appellant and spoke to Doe, who was sitting in the front seat crying. Doe said she was OK and not injured; she refused medical attention. Doe said appellant "never did anything like this before." She said the two were traveling through Ohio after appellant participated in a triathlon in Missouri. The two were engaged and lived together in Virginia. They argued on the freeway about her driving and she pulled into the Valero lot to switch places with appellant.

{¶7} The car is registered to appellant. After arrest, appellant permitted Doe to keep possession of it.

{¶8} Doe provided a written statement noting she will not press charges against appellant.

{¶9} At trial, Doe testified on behalf of appellant. She testified that May 20, 2019, was the culmination of several weeks in which she had been unusually emotional, which she attributed to issues with P.M.S. She minimized the incident witnessed by Holmes, testifying that appellant was only trying to "get [her] under control because [she] was acting irrational and sporadic and crazy…." T. 150. She agreed appellant grabbed her by the shoulders but denied that he slammed her into the car, claiming that he held her "tenderly." She testified that she wanted the criminal charges against appellant dropped.

{¶10} Upon cross-examination, Doe testified the pair are still engaged and live together. When asked why she told Holmes this was the first time appellant acted this way, she responded that she meant this is the first time appellant "comforted" her like this. She testified she didn't remember if appellant lifted her off the ground, and denied he put her in a choke hold; instead, she said he merely wrapped his arm around her shoulders.

{¶11} Appellant testified on his own behalf at trial and said it was Doe who was upset that day because they didn't go to brunch. He testified that Doe "seem[ed] off" for weeks and that when she got out of the car to let him drive, she looked like a "zombie." T. 171-172. He denied yelling at her but acknowledged that he did hold her "firmly." Appellant testified he understood why the officer perceived a problem because appellant was "full of adrenaline" but he never tried to hurt Doe. He merely helped her into the car and never slammed her against the car.

{¶12} Upon cross-examination, appellant said it was "plausible" that he lifted Doe off the ground but he absolutely was not yelling at her; he said he put his forehead against hers and "almost kissed her." T. 181. Appellant insisted he was calm throughout the incident and acknowledged that Doe testified he had his arm around her, but she could breathe.

{¶13} Appellee recalled Deputy Holmes upon rebuttal and Holmes disputed appellant's account that he merely hugged Doe. Holmes testified that if that was the case, he would not have gotten involved. Holmes testified appellant got out of the car aggressively and was visibly angry; he handled Doe in such a manner that he could have hurt her. Holmes testified that appellant was yelling at Doe the entire time he was physically engaged with her. Additionally, Doe was crying when she exited the vehicle.

{¶14} Appellant was charged by criminal complaint with one count of domestic violence pursuant to R.C. 2919.25(A) and one count of assault pursuant to R.C. 2903.13(A). Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A); the motions were overruled. Appellant was found guilty as charged. The trial court found the offenses

merged for purposes of sentencing and appellee elected to sentence upon the count of domestic violence. The trial court sentenced appellant to a jail term of one day, for which he was given credit for time served, and a fine of $150.

{¶15} Appellant now appeals from the trial court's judgment entry of conviction and sentence.

{¶16} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶17} "I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS."

{¶18} "II. THE PROSECUTOR'S INSINUATION THAT THE DEFENSE MANUFACTURED TESTIMONY CONSTITUTED MISCONDUCT AND DEPRIVED APPELLANT OF HIS RIGHTS TO DUE PROCESS AND TO A TRIAL BY AN IMPARTIAL JURY CONTRARY TO THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION."

{¶19} "III. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶20} "IV.  LOCAL RULE 45.00 OF THE LICKING COUNTY MUNICIPAL COURT VIOLATES THE SIXTH AMENDMENT RIGHTS OF DEFENDANTS TO AN IMPARTIAL JURY."

**ANALYSIS**

I.

{¶21} In his first assignment of error, appellant argues his domestic violence and assault convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.  We disagree.

{¶22} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶23} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶24} Appellant was found guilty upon one count of domestic violence pursuant to R.C. 2919.25(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant was also found guilty upon one count of assault pursuant to R.C. 2903.13(A), which states, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶25} Appellant argues his convictions are against the manifest weight and sufficiency of the evidence because appellee did not prove he attempted to harm Doe. Upon our review of the record, we disagree and note Holmes testified appellant "handled" Doe in such a way that she could have been injured: he grabbed her by her upper arms, picked her up off the ground, and slammed her against the car. Holmes further described appellant holding Doe in a chokehold. We have held that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. See, *State v. Dunn*, 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, ¶ 133.

{¶26} Appellant points to minor inconsistencies between Holmes' trial testimony and his narrative report, and argues that Holmes' testimony is controverted by the testimony of appellant and Doe. We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The jury as the trier of fact was

free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Johnson*, 2015–Ohio–3113, 41 N.E.3d 104, ¶ 61 (5th Dist.), citing *State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶27} Any inconsistencies in the evidence were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Delevie*, 5th Dist. Licking No. 18-CA-111, 2019-Ohio-3563, ¶ 30, appeal not allowed, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 927, citing *State v. Brindley*, 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16. In the instant case, appellee's evidence was compelling, and the jury was free to weigh appellant's self-serving testimony accordingly.

{¶28} We find the trial court did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's convictions be reversed and a new trial ordered. Appellant's convictions are not against the manifest weight or sufficiency of the evidence.

{¶29} Appellant's first assignment of error is overruled.

II.

{¶30} In his second assignment of error, appellant argues the prosecutor committed misconduct by "insinuat[ing] that the defense manufactured testimony." We disagree.

{¶31} During cross-examination of appellant, the prosecutor asked if appellant and Jane Doe discussed her testimony prior to trial, specifically, whether he lifted her off the ground during the altercation. Doe testified he did lift her off the ground, and appellant testified he did not.

{¶32} Appellant acknowledged he and Doe spoke of the incident that day but denied they discussed her testimony in advance. The following statements were then made:

> * * * *.
>
> PROSECUTOR: But you just said that you asked her if she thought…if she thought you lifted her up off the ground on your drive back?
>
> APPELLANT: I did ask her that.
>
> PROSECUTOR: Okay did you both meet with your attorney?
>
> APPELLANT: Yesterday.
>
> PROSECUTOR: Now when she got out of the car and she came around your testimony is that you weren't screaming at her?
>
> APPELLANT: Absolutely not.
>
> * * * *.
>
> T. 180.

{¶33} Appellant argues that in this exchange, the prosecutor suggested that appellant and Doe met with defense counsel and manufactured testimony. Brief, 16. Appellant did not object to the question.

{¶34} The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott*, supra, 51 Ohio St.3d at 166.

{¶35} As demonstrated in the portion of the record cited supra, appellant did not object to the alleged improper insinuation at trial. If trial counsel fails to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. White*, 82 Ohio St.3d 16, 22, 1998–Ohio–363, 693 N.E.2d 772 (1998), citing *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992).

{¶36} We therefore review appellant's allegation under the plain-error standard. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious'

defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No. 2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales*, 10th Dist. Nos. 03-AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶37} If a prosecutor's comments are found to be improper, it is not enough that there is sufficient evidence to otherwise sustain a conviction. "Instead, it must be clear beyond a reasonable doubt that absent the prosecutor's comments, the jury would have found defendant guilty." *State v. Clay*, 181 Ohio App.3d 563, 2009–Ohio–1235, 910 N.E.2d 14 at ¶ 49 (8th Dist.), citing *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984).

{¶38} In the instant case, we disagree with appellant's characterization of the record; the single question whether appellant and Doe met with his attorney did not create in the jury a belief that appellant and defense counsel "manufactured testimony." Appellant points to no such explicit suggestion in the record. Moreover, it would not make sense for appellee to insinuate the parties manufactured testimony when in fact they testified differently about whether appellant lifted Doe off the ground.

{¶39} Finally, appellant cannot demonstrate, even if the cited question was improper, "but for" the question he would not have been convicted. Appellee presented compelling evidence, including the testimony of a law enforcement officer on the scene who witnessed the incident from its inception. Having failed to demonstrate a causal

connection between the alleged misconduct and his resulting convictions, appellant cannot demonstrate reversible error. See, *State v. Montgomery*, 5th Dist. Fairfield No. 14-CA-49, 2015-Ohio-3066, ¶ 30.

{¶40} Appellant's second assignment of error is overruled.

III.

{¶41} In his third assignment of error, appellant argues he received ineffective assistance of defense trial counsel. We disagree.

{¶42} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶43} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

{¶44} Appellant points to several instances of alleged ineffective assistance and we will examine each in turn.

{¶45} First, appellant argues defense trial counsel failed to object when appellee's witness "attempted to direct a verdict against appellant." Again, upon examination of the record, we disagree with appellant's characterization. During direct examination, the prosecutor asked Holmes why he arrested appellant, and Holmes responded, "Based on what I saw. Witnessing the act of aggression and the violence towards her I could not knowingly release them to continue down the road. If something would have happened down the road I am responsible for that and I can't do that." The prosecutor then asked Holmes what he meant by "violence and aggression," and Holmes responded, "There has to be a level of violence. If you physically pick somebody up off the ground two feet and slam them in to the side of a car there is violence and aggression there. That is not normal behavior that a husband and wife, boyfriend and girlfriend that's not normal interaction between them." (T. 116-117).

{¶46} Appellant asserts defense trial counsel's failure to object to these questions constitutes ineffective assistance, although he does not state what the grounds for objection would have been. Instead, he asserts that Holmes' responses "invaded the province of the jury." Brief, 18. Relevant evidence that invades the province of the jury is unduly prejudicial. *State v. Foster*, 5th Dist. Richland No. 2005CA0033, 2005-Ohio-6878, ¶ 31. However, the officer's testimony cited here "provided a clear picture from which the

jury could reach its decision." *Id.* We disagree with appellant's conclusion that the testimony invaded the province of the jury, and therefore find no ineffective assistance.

{¶47} Appellant next points to defense trial counsel's question to Holmes whether Doe told him if appellant had ever done anything like this before, pointing to the ensuing argument by appellee that Doe's denial implies "something bad" happened. T. 200. Defense trial counsel asked the question among a string of questions aimed at minimizing the altercation, eliciting testimony from Holmes that Doe wasn't injured and nothing like this had ever happened before. Moreover, appellant called Doe as his witness and was able to address this issue with her directly.

{¶48} We find the question to Doe, designed to minimize the incident, to be trial strategy. It is well-established that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Harris*, 5th Dist. Richland No. 15CA9, 2015-Ohio-5400, ¶ 59, citing *State v. Phillips,* 74 Ohio St.3d 72, 85, 656 N.E.2d 643, 1995–Ohio171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. *Id.* "Poor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *Id.*, citing *State v. Clayton,* 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980).

{¶49} The presentation of witnesses, questioning, and cross-examination of witnesses falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *State v. Crank*, 5th Dist. Stark No. 2016CA00042, 2016-Ohio-7203, ¶ 19, appeal not allowed, 148 Ohio St.3d 1428, 2017-Ohio-905, 71 N.E.3d 299, citing *State v. Hoffner,* 102 Ohio St.3d 358, 2004–Ohio–3430, 811 N.E.2d 48, ¶ 45.

In addition, to fairly assess counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.

{¶50} Finally, appellant argues that he was prejudiced by the cumulative effect of multiple alleged instances of ineffective assistance of counsel. We found no basis for a claim of ineffective assistance of counsel upon review of each of appellant's assertions, and conclude there can be no cumulative effect. *State v. Thorne*, 5th Dist. Stark No. 2003CA00388, 2004-Ohio-7055, ¶ 73, appeal not allowed, 105 Ohio St.3d 1502, 2005-Ohio-1666, 825 N.E.2d 624. Appellant has not demonstrated that any claimed deficiencies of trial counsel created "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. James*, 5th Dist. Stark No. 2016CA00144, 2017-Ohio-7861, ¶ 68.

{¶51} Appellant's third assignment of error is overruled.

IV.

{¶52} In his fourth assignment of error, appellant argues that Local Rule 45.00 of the Licking County Municipal Court violates his right to an impartial jury. We disagree.

{¶53} Local Rule 45.00 of the Licking County Municipal Court--EXEMPTION, EXCUSE OR DEFERRAL—states the following in pertinent part:

> Prospective jurors with automatic exemptions shall be removed from the prospective panel by the jury commissioner. Eligible persons who are summoned may be excused from service only if it is determined that their ability to receive and evaluate information is so impaired that they are unable to perform their duties

as jurors, or that service upon a jury would constitute a significant hardship to them or members of the public. Persons excused from service may be deferred and may be subject to jury service at a later time. All requests for excuse or deferral must be made on the form provided, and shall be accompanied by appropriate documentation. These documents shall be retained by the Court.

The following factors constitute a partial, although not exclusive, list of excuses for which a person may be excused or deferred from jury service:

* * * *.

(e) Any person who has served on a jury within the last year.

* * * *.

No person shall be excused from jury service, except by the Judge or an individual specifically authorized to excuse jurors. Once a prospective juror has submitted his/her request for excuse or deferral, the prospective juror must report for service unless otherwise notified by the Court.

{¶54} In the instant case, the record reveals the issue first arose during voir dire when the trial court asked whether anyone in the jury pool "served as a juror in any other court of record within Licking County in the last twelve months." T. 18. Juror 9 stated that yes, he served as a juror in the Court of Common Pleas approximately a month prior. The trial court said Juror 9 was eligible to be excused if he would like to be, and Juror 9 agreed that yes, he would like to be excused. The trial court then stated, "Okay I will

excuse you but I will make you wait until after we pick the jury because that way we can give you your check today alright." T. 19. Juror 9 agreed.

{¶55} We note no objection was raised by either party during this exchange. Peremptory challenges and challenges for cause were not made on the record. T. 80. The trial court seated the chosen jurors and excused those remaining, including Juror 9. Again, no objection was raised. T. 82.

{¶56} Later, after the presentation of evidence concluded but before the return of the jury verdicts, the trial court stated the following in pertinent part:

> During the voir dire process as we selected the jury the following jurors were excused for cause by agreement of the parties. * * * *. The state moved to challenge [Juror 9] for cause, the defendant objected to that juror being excused for cause and the court overruled the objection and the court specifically notes that [Juror 9] indicated that he had served jury duty within the last twelve months and pursuant to local rule 45.00 subsection (e) that is grounds for excuse…or being excused. * * * *."
>
> T. 220.

{¶57} Appellee noted Juror 9 did choose to be excused based upon his prior service; the trial court agreed that Juror 9 was given the option to remain but he chose not to do so. T. 221.

{¶58} Appellant summarily argues the excusal of Juror 9 violated his right to a panel of impartial jurors drawn from a cross-section of the community pursuant to the

Sixth Amendment, claiming he wanted to keep Juror 9 on the panel but exclusion of Juror 9 denied his right to a jury representing a fair cross-section of the community.

{¶59} First, we find no support in the record for appellant's factual assertions. The basis of appellant's objection to dismissal of Juror 9 is not in the record. Nor did appellant proffer any evidence that excusal of Juror 9 somehow violated his right to a panel representing a cross-section of the community.

{¶60} Nor does appellant reveal in what manner he was allegedly prejudiced. The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant's right to have a jury chosen from a fair cross-section of their community. *State v. Scott*, 5th Dist. Stark No. 2001CA0004, 2001-Ohio-7053. However, this requirement of a fair cross-representation of the community need not be interpreted to mean the array of the members of the venire consist of an exact cross-section of the community. *Id.*

{¶61} Furthermore, as the Ohio Supreme Court stated in *State v. Strodes* , 48 Ohio St.2d 113, 115-116, 357 N.E.2d 375 (1976), vacated as to the death penalty, (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1154:

> Under the United States Constitution, a defendant is entitled not to a perfect cross section of citizens for the jury panel, but only to panels selected by the best method that thoughtful [individuals], who are cognizant of the practicalities of selection and the inherent problems involved, have been able to develop. Unless prejudice to the defendant or the systematic and intentional exclusion of a group is shown, we will not reverse a judgment because of minor and technical defects in jury-selection procedures. "[G]roups defined

solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors * * * are not 'distinctive groups' for fair-cross-section purposes. The array of the venire need not reflect an exact cross section of the community."

{¶62} In the instant case, appellant did not argue excusal of Juror 9 violated his Sixth Amendment right to trial by jury, and he has waived any complaint absent plain error. *Scott*, supra, 2001-Ohio-7053. Crim. R. 52(B) provides that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

{¶63} Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Id.* We note appellant does not claim that systematic or intentional exclusion occurred in this case. Accordingly, we find no plain error in the makeup of the jury or of the venire. *Scott,* supra.

{¶64} Appellant's fourth assignment of error is overruled.

**CONCLUSION**

{¶65} Appellant's four assignments of error are overruled and the judgment of the

Licking County Municipal Court is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.