[Cite as *State v. Humphrey*, 2021-Ohio-916.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 20CAA010001 |
| | : | |
| DANA L.H. HUMPHREY | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
of Common Pleas, Case No.
18CRI050289

JUDGMENT:                                    AFFIRMED

DATE OF JUDGMENT ENTRY:         March 22, 2021

APPEARANCES:

For Plaintiff-Appellee:

MELISSA A. SCHIFFEL
DELAWARE CO. PROSECUTOR
R. JOSEPH VARVEL
145 North Union St.
Delaware, OH 43015

For Defendant-Appellant:

JAMES S. SWEENEY
285 South Liberty St.
Powell, OH 43065

*Delaney, J.*

{¶1} Appellant Dana L. H. Humphrey appeals from the December 16, 2019 Judgment Entry of Sentence of Community Control of the Delaware County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following facts are adduced from the record of appellant's jury trial.

*Appellant is arrested for criminal trespass*

{¶3} Ptl. Jaime Frisch and Ptl. Theo Turner are police officers with the city of Columbus and were partners in one vehicle on July 26, 2017. The officers were driving a prisoner transport vehicle, or P.T.V., commonly referred to as a "paddy wagon," throughout their afternoon shift. The P.T.V. is a full-size passenger van which is usually dispatched to calls involving potentially violent offenders. Around 3:30 p.m., Frisch and Turner were dispatched to the Extended Stay America hotel on South Polaris Parkway. This location is in the city of Columbus and the county of Delaware.

{¶4} The hotel manager called police because a hotel guest caused a disturbance. Management wanted the guest to leave the premises. Frisch and Turner accompanied the manager in the elevator to the third floor of the hotel.

{¶5} Immediately upon exiting the elevator, the officers heard a woman screaming obscenities from a guest room down the hall. At trial, both officers identified the guest as appellant. The door to appellant's room was ajar, and the officers looked in to see that the room was in disarray, with broken items and silverware including knives strewn around the room. The room was a mini-suite with a kitchenette. Appellant and her husband were arguing. At first the officers thought it might be a domestic violence

incident. The officers separated the two; Frisch entered the hall with appellant's husband and Turner remained in the room with appellant. They noted a broken table and chairs in the room.

{¶6} Hotel management told appellant and her husband they both had to leave the premises immediately. The husband argued and attempted to negotiate, but management demanded they both leave immediately. The husband asked hotel staff for time to pack.

{¶7} Appellant, on the other hand, remained belligerent and refused to leave, despite being told several times she must leave immediately. Appellant held out her arms to the officers several times, as if to be handcuffed, refusing to leave and stating they "would have to arrest her." Ultimately the officers determined appellant would in fact be arrested and they attempted to handcuff her. Appellant refused to cooperate and the officers could not place both cuffs on her wrists. Turner placed appellant face-down on the couch to handcuff her, and appellant was arrested for criminal trespass.

{¶8} The officers' goal was to remove appellant from the premises. Frisch testified she suspected appellant had a mental health issue because of her "roller coaster" behavior, but they would decide whether appellant required a mental health evaluation after removal from the hotel.

*Appellant kicks Frisch in the throat*

{¶9} The officers escorted appellant in handcuffs to the elevator and down to the lobby. She would not cooperate and continued to struggle with them. She also screamed obscene, derogatory comments at both officers, causing a disturbance in the lobby. Other guests moved away as the officers brought appellant out the front of the hotel to the P.T.V.

{¶10} The officers opened the double doors on the rear of the van and appellant said, "Fuck you, I'm not getting in." Appellant refused to climb the two steps into the van, telling the officers, "You're going to have to pick me up." Appellant sat with her buttocks on the edge of the van and her legs braced against the steps. The officers continued to struggle with her but she wouldn't budge. Turner climbed into the van for the purpose of lifting from appellant from behind; Frisch intended to grab her feet.

{¶11} Frisch and appellant made eye contact, and appellant said, "Fuck you, bitch." She then kicked Frisch in the throat.

{¶12} The kick activated Frisch's microphone. Frisch testified her microphone is monitored by dispatch, and she was unable to "air up" upon activation of the mic because she could not breathe or speak. Frisch needed a few moments to recover. As Frisch stood by, Turner pulled appellant into the van and placed her in the seat, strapped in with a seat belt. Additional officers were immediately dispatched to the scene when Frisch failed to answer her mic.

{¶13} Frisch testified the assault caused a visible red mark on her neck, of which appellee introduced photos at trial. Frisch confirmed she was injured but not seriously. She did not require medical treatment although she was checked by medics. Frisch's sergeant and detectives arrived on the scene and decided to charge appellant with assault of a peace officer.

{¶14} Frisch and Turner intended to transport appellant to headquarters in the P.T.V. She kept falling out of the seat, however, requiring the officers to stop on the side of the freeway in heavy traffic to secure her again. At one point appellant said she couldn't breathe and a squad was called. The first squad on the scene said appellant did not

require treatment. Later a second squad was called and transported appellant to Grant Hospital. The P.T.V. contains three cameras monitoring the interior, but the cameras have to be manually activated. The cameras were not activated when Frisch and Turner were struggling to get appellant into the van. The kick was therefore not recorded. Appellee's Exhibit 7 is video of appellant on the floor of the van, after kicking Frisch. A paramedic asks appellant to roll over and she says "it hurts," claiming Turner threw her to the ground and she had a seizure. Appellant says she has Crohn's disease and a colon infection; she also states she has "pseudo-seizures" from stress.

{¶15} A sergeant asks appellant whether she wants to be lifted and placed on the bench in the van, and appellant says "yes but it hurts." The sergeant tells her to behave and asks her not to kick him, and appellant replies "I jerked, that was a 'pseudo-seizure.'"

{¶16} Another video from the P.T.V. shows Frisch asking appellant, "If I take this off, will you not kick me again?" and appellant replies, "I didn't mean to kick you." Frisch says, "Yes you did, you called me names," and appellant replies "That's my seizures."

{¶17} Detective Liford interviewed appellant at Grant Hospital and told her Frisch accused her of kicking her in the throat. Appellant said that was a lie because she "is not a fighter" and has rheumatoid arthritis; she couldn't climb the steps into the van, much less kick Frisch. Appellant also told Liford that if she kicked Frisch, it was an accident.

*Appellant's trial testimony*

{¶18} Appellant was the only defense witness at trial. She testified she has a number of health conditions including "pseudo-seizures" and is on permanent disability. She said "pseudo-seizures" are similar to epileptic seizures but are stress-induced. She also testified "anger is involved" and she sometimes makes involuntary movements.

{¶19} Appellant stated that on July 26, 2017 she was not medicated for her mental health issues, but she was successfully treated in the meantime and was now on medication.

{¶20} Appellant testified that she and her husband stayed at the Extended Stay America for three months, intending to qualify for Medicare to cover a visit to a neurologist at O.S.U. Appellant said she and her husband argued that day because they could no longer afford to stay at the hotel; she acknowledged she became irate and pulled the silverware drawer out, scattering knives over the floor, but denied trashing the room.

{¶21} Appellant further testified that when officers arrived, Frisch spoke to her husband in the hallway. In the meantime, Turner "became violent" with her in the room. Appellant claimed Turner threw her to the ground, pulled her hair, and violently rubbed her face and nose into the ground.

{¶22} Appellant testified the officers escorted her to the paddy wagon but she didn't want to get in. She told them they would have to pick her up and they "threw" her onto the floor of the van. She testified she landed on a metal belt buckle and was "knocked out" for a minute. When she regained consciousness, she heard Frisch say, "She kicked me," and saw her place her hand on her throat. Upon direct examination, appellant insisted she was in the throes of a "pseudo-seizure" that day; her movements were involuntary; and she did not intend to kick Frisch.

{¶23} Upon cross-examination, appellant said the "abuse" from the officers caused her stress which triggered the seizure, possibly resulting in an accidental kick. Appellant testified she did not intend to kick Frisch.

*Indictment, competency restoration, trial and conviction*

{¶24} Appellant was charged by indictment with one count of assault of a peace officer pursuant to R.C. 2903.13(A), a felony of the fourth degree, and entered a plea of not guilty.

{¶25} Appellant sought and was granted a competency evaluation. By judgment entry dated September 25, 2018, the trial court found appellant to be incompetent but restorable, and ordered her to undergo treatment to restore competency.

{¶26} On December 3, 2018, appellant entered a plea of not guilty by reason of insanity, and the trial court ordered a psychiatric evaluation on December 7, 2018.

{¶27} On February 10, 2019, appellant filed a motion to dismiss on the basis of double jeopardy. Appellant argued she was charged with misdemeanor offenses of resisting arrest and criminal trespass "arising from the same incident on the same day" as the felonious assault of a peace officer in the instant case. Appellant had entered pleas of no contest to the misdemeanor charges and was found guilty in Franklin County Municipal Court. Appellant conceded she was also directly indicted by the Franklin County Grand Jury for one count of assault of a peace officer, a fourth-degree felony, but that indictment was dismissed without prejudice because it was filed in the wrong county.

{¶28} Appellee responded with a memorandum in opposition asserting the misdemeanor offenses arose from different conduct than the felony offense. Appellant replied there was no break in time in her actions separating the misdemeanor offenses from the felonious assault, arguing her conduct was continuous throughout the entire encounter with police. On April 11, 2019, the trial court overruled appellant's motion to dismiss.

{¶29} On April 17, 2019, the trial court ordered a psychiatric examination of appellant. Appellant moved for, and was granted, funding for an independent expert examination. On October 22, 2019, the trial court filed a Judgment Entry Finding Defendant Competent.

{¶30} Prior to trial, the trial court ruled by judgment entry on several motions in limine filed by appellant. The trial court granted appellant's motion in limine to exclude evidence of her alleged use of racial slurs during the encounter with Frisch and Turner and granted her motion to exclude evidence of the misdemeanor convictions arising on the same date.

{¶31} Appellant withdrew her previously-entered plea of not guilty by reason of insanity and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence; the motion was overruled. Appellant was found guilty as charged.

{¶32} Sentencing was deferred until December 9, 2019. On that date, the trial court determined a prison term is not consistent with the purposes and principles of sentencing and appellant is amenable to an available community control sanction. Appellant was therefore sentenced to a community-control term of 3 years.

{¶33} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶34} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHEN THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶35} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE DEFENDANT'S MOTION FOR ACQUITTAL AS THE GUILTY VERDICTS AT THE TRIAL COURT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶36} "III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE."

{¶37} "IV. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL TO A DEGREE THAT APPELLANT DID NOT RECEIVE A FAIR TRIAL."

**ANALYSIS**

I., II.

{¶38} Appellant's first and second assignments of error are related and will be considered together. She argues her conviction for assaulting a police officer is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.

{¶39} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶40} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶41} Appellant was found guilty upon one count of R.C. 2903.13(A), assault, with an additional finding that the victim was a peace officer pursuant to R.C. 2903.13(C)(5), elevating the offense to a felony of the fourth degree. Appellee was required to prove appellant knowingly caused or attempted to cause physical harm to Frisch, a peace officer, while in performance of Frisch's official duties. Appellant challenges the element of "knowingly," arguing the evidence does not establish she knowingly assaulted Frisch because she was in the midst of a "pseudo-seizure" when the kick occurred.

{¶42} The jury was given the option of finding appellant not guilty if they agreed she was suffering from some type of medical event rendering the kick unintentional. The jury was instructed upon the definition of "knowingly" pursuant to the language of R.C. 2901.22(B):

* * * *.

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

* * * *.

T. II, 649-650.

{¶43} The jury was also given a "blackout" instruction relating to appellant's alleged medical event. The jury was instructed:

* * * *.

Where a person commits an act while unconscious, as in a coma, blackout, or convulsion due to heart failure, disease, sleep, or injury, such act is not a criminal offense though it would be a crime if such act were the product of a person's will or volition.

If you have a reasonable doubt whether the Defendant was conscious at the time of such act, you must find that she is not guilty. If you find the Defendant was conscious, such finding does not relieve the State of its burden of establishing by required weight of the testimony that such act was knowingly committed.

Reflexes, convulsions, body movements during unconsciousness or sleep, or body movements that are not otherwise a product of the actor's volition are involuntary acts.

* * * *.

T. II, 650.

{¶44} We find appellee presented sufficient evidence appellant knowingly kicked Frisch. In fact, appellant concedes Frisch testified appellant made eye contact with her and said "Fuck you, bitch," when kicking her; this testimony constitutes evidence of "knowingly." The testimony of one witness, if believed by the factfinder, is enough to support a conviction. See, *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, ¶ 133. Turner also heard appellant say "Fuck you, bitch." Despite this statement, appellant points to several explanations for the kick: she was highly agitated and flailing, her legs were shaking involuntarily, she was in the midst of a "pseudo-seizure," and finally, the kick was accidental.

{¶45} Appellant also points to minor inconsistencies in the officers' trial testimony versus the narrative police report. We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Johnson*, 2015-Ohio-3113, 41 N.E.3d 104, ¶ 61 (5th Dist.), citing *State v. Nivens,* 10th Dist. Franklin

No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶46} Any inconsistencies in the evidence were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Delevie*, 5th Dist. Licking No. 18-CA-111, 2019-Ohio-3563, ¶ 30, appeal not allowed, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 927, citing *State v. Brindley*, 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16.

{¶47} In the instant case, appellee's evidence was compelling, and the jury was free to weigh appellant's self-serving testimony accordingly. *State v. Spiess*, 5th Dist. Licking No. 19-CA-106, 2020-Ohio-4376, ¶ 27. She contends the jury should have believed her testimony that she was in a blackout state, but her descriptions of her ailments varied and were at odds with the testimony of the officers and the video and audiotapes of her actions.

{¶48} As appellee points out, the only evidence of appellant's "pseudo-seizure" was her own self-serving testimony. The jury had ample opportunity to observe appellant's demeanor and actions on the day of the assault. Appellant herself admitted she was irate and highly agitated throughout the incident.

{¶49} Upon our review of the entire record, we find appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Her first and second assignments of error are overruled.

III.

{¶50} In her third assignment of error, appellant argues the trial court erred in failing to grant her motion to dismiss on grounds of double jeopardy. We disagree.

{¶51} R.C. 2941.25 protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

> Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶52} The application of R.C. 2941.25 requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes,* 5th Dist. Coshocton No. 15CA0008, 2016-Ohio-880, ¶ 21. The Supreme Court of Ohio has instructed us to ask three questions when a defendant's conduct supports multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct,

the animus, and the import must all be considered." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶53} In the instant case, appellant argues her misdemeanor conviction of resisting arrest precluded her subsequent conviction upon the assault of a police officer because the two are allied offenses of similar import. Appellant cites *State v. Johnson*, 7th Dist. Mahoning No. 12 MA 137, 2014-Ohio-4253, appeal not allowed,142 Ohio St.3d 1449, 2015-Ohio-1591, 29 N.E.3d 1003, for her argument that resisting arrest and assault are allied offenses subject to merger. We do find *Johnson* instructive, although we disagree with appellant's application to the instant case.

{¶54} In *Johnson*, a defendant committed a series of offenses against two officers during a traffic stop melee. First, the defendant separately refused to present identification and failed to stop using her cell phone when asked by an officer. Then she failed to step out of the vehicle upon the first officer's request; he attempted to grab her cell phone and knocked her wig off, angering her; the defendant then exited the vehicle, punched the first officer, and punched a second officer when he tried to assist. *Id., ¶* 115. The *Johnson* court found the misdemeanor obstructing offenses—the refusal to present identification followed by the failure to stop using the cell phone—were committed separately and were not allied offenses, with each other or with the assaults. The next series of actions--refusing to exit the vehicle, leading to the wig incident, then exiting the vehicle and assaulting both officers—was one continuous series of events, all with a single animus: in the process of resisting arrest, the defendant committed two assaults. *Id., ¶* 116.

{¶55} The *Johnson* court looked to *State v. Logan,* 60 Ohio St.2d 126,131, 397 N.E.2d 1345 (1979) for the definition of animus:

> * * * R.C. 2941.25(B), by its use of the term "animus" requires us to examine the defendant's mental state in determining whether two or more offenses may be chiseled from the same criminal conduct. In this sense, we believe that the General Assembly intended the term "animus" to mean purpose or, more properly, immediate motive.
>
> Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. * * * Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime.
>
> *State v. Johnson*, 7th Dist. Mahoning No. 12 MA 137, 2014-Ohio-4253, ¶ 116, citing *State v. Logan,* 60 Ohio St.2d 126,131, 397 N.E.2d 1345 (1979) (internal citations omitted).

{¶56} In the instant case, unlike *Johnson,* the misdemeanor resisting offense was dissimilar in import, committed separately, and with separate animus and motivation. Appellant resisted arrest in the hotel room with both officers; she refused to be handcuffed, struggled, and ultimately required placement on the couch by Turner. The officers then escorted her out of the hotel. Outside, separately, appellant refused to enter the P.T.V. As the officers attempted to maneuver her inside, she swore at Frisch and

kicked her in the throat. The resisting arrest and assault offenses were thus separated by time, motive, and animus. The resulting harms were completely separate: complicating the task of the officers in removing her from the hotel room, versus injuring Frisch's neck in a malicious act. Appellant's motive in resisting arrest was to remain in the hotel room. Her kick to Frisch's throat, coupled with the profane insult, was purely a malicious act of retaliation.

{¶57} We conclude appellant's conviction upon resisting arrest did not preclude her prosecution and conviction for assault of a peace officer under these circumstances. Appellant's third assignment of error is overruled.

IV.

{¶58} In her fourth assignment of error, appellant argues she received ineffective assistance of defense trial counsel because counsel did not present any expert testimony regarding her medical conditions. We disagree.

{¶59} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶60} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same

way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶61} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶62} Appellant argues that defense trial counsel should have presented additional evidence in the form of expert testimony, or testimony from her own medical providers, about the specific nature of appellant's medical conditions. Appellant assumes such testimony would corroborate her vague claims of "pseudoseizures" and involuntary movements. Without such evidence, appellant's case rested solely upon her own self-serving testimony, which was often contradictory. We note appellant variously blamed pseudo-seizures, unspecified mental illness, medication errors, and accident for kicking Frisch on July 26, 2017.

{¶63} Appellant's argument rests upon speculation that such evidence exists and that it would be exculpatory. We cannot find trial counsel erred in failing to present evidence that might not exist. We have no basis to conclude defense trial counsel failed in presenting any such evidence. We also have no basis to speculate any such evidence would have resulted in a different outcome at trial.

{¶64} We find appellant did not receive ineffective assistance of trial counsel. Her fourth assignment of error is overruled.

**CONCLUSION**

{¶65} Appellant's four assignments of error are overruled and the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, J.,

Baldwin, P.J. and

Wise, John, J., concur.